### J. M. GILES, ET AL. *v.* SAMUEL WHITE'S EX'R, ET AL.

**Guardian's Liability.**

Where, when a guardian takes charge of his ward's estate, a former guardian has loaned a part of the ward's money and taken a note with personal security, and the new guardian believing it to be safer, and in the exercise of his judgment, took a mortgage from the debtor on 320 acres of land to secure such debt, and released the old surety, it is held that the guardian is not liable for loss of such money when he acted in entire good faith, and did what a prudent man would have done in taking such mortgage.

**Guardian Not Insurer of Ward's Funds.**

The law does not require that a guardian shall be an insurer of the funds of his ward. He is only held to use his best skill, prudence and care in the management of his ward's property.

#### APPEAL FROM CHRISTIAN CIRCUIT COURT.

December 2, 1879.

OPINION BY JUDGE HINES:

Immediately upon the appointment of appellee as guardian he instituted an action to recover of the former guardian and his surety, Woodson, the amount due his wards, and in a few days thereafter caused attachments to be issued and levied on the property of Woodson, which attachments were, on hearing, discharged. After the answer of Woodson was filed appellee moved the court to grant him judgment for the uncontroverted part, which was refused, and therefore, the case being in equity, on motion of appellee Woodson was ruled to and did execute bond, with Moore as surety, to satisfy such judgment as the court might render. Subsequently, on the advice of counsel, Woodson executed a mortgage on 320 acres of land and upon some other property to secure the debt, and the action against Woodson was dismissed, and the bond of Woodson and Moore discharged after the mortgage to appellee as guardian was executed. Woodson executed another mortgage on the same property to one Jones for $5,000, and on an action being instituted to foreclose the last mentioned mortgage, appellee and his wards were made parties. The land was first decreed to be sold to first pay the mortgage debt due appellee as guardian, and on sale under that decree the land failed to bring more than about one-half of the mortgage debt, the other property mortgaged having been consumed in discharging a prior lien. After the confirmation of that

sale appellants, the former wards of appellee, instituted this action against appellee and his surety on the guardian bond to recover of the guardian the amount due from Woodson at the time he executed the mortgage to appellee, and asking that the decree of sale in the case of Jones against Woodson be treated as a nullity on account of certain irregularities and errors appearing in the progress of the case. From a judgment dismissing appellants' petition this appeal was prosecuted. .

The principal question is, Did appellee act in good faith and with sound discretion in taking the mortgage on the 320 acres of land in lieu of the bond of Woodson and Moore? At the time the mortgage was executed Woodson was considered solvent, owned considerable property, but was not, as stated by some of the witnesses, considered a safe business man. The surety on the attachment bond stated that he then considered him in a precarious condition. Within a few months after this, judgments to quite an amount were rendered against Woodson, and within a short time he was known to be insolvent. Moore, the surety for Woodson, was at the time supposed to be worth about $7,000. The evidence tends to the conclusion that the land, at the time the mortgage was executed, was worth near $25 per acre, and that at the date of the foreclosure it was worth, when sold upon the usual terms, from $15 to $18 per acre. The evidence also shows that at the sale, under decree of foreclosure, the land was purchased for the wards, appellants here.

It may be safely assumed that as a matter of fact Woodson was in a precarious financial condition at the date of the execution of the mortgage, and that Moore, in case he should be entitled to the statutory exceptions to which a housekeeper with a family is entitled, was not worth enough to satisfy the whole amount of the bond. That the court considered Woodson of doubtful solvency is manifested by the order requiring him to give bond to secure the indebtedness to the wards. That appellee did believe and had reason to believe that such was the financial condition of Woodson and Moore at the time the mortgage was accepted can not be doubted; and as there appears no reason for the refusal of the court to give judgment for the uncontroverted portion of the indebtedness, it is reasonable to suppose that the appellee anticipated a protracted litigation and a consequent danger to the wards' interest. Under these circumstances, can it be said that the debt due from Woodson was entirely safe, and that the bond of Woodson, with Moore as

surety, was a better reliance than a mortgage on real estate esti-
mated at a thousand or more dollars than the debt to secure which
the mortgage executed?

It appears to us that under such circumstances a chancellor would
have approved or directed the investment of the funds of the wards
in the more permanent investment of the mortgage security. The
fact that time was given, by annual payments, for five years in
which to satisfy the mortgage, ought not to alter the case. The
land was then of value more than sufficient to pay the debt and
interest, when the interest in the other mortgaged property is con-
sidered. But without reference to the other property, the greater
portion of which was consumed in discharging prior liens, we think
that appellee acted with as much prudence, skill and energy in
securing the claim of his wards as the law demands. It was not his
fault that it became necessary to institute proceedings against Wood-
son to recover the money of his wards. The action of the former
guardian placed the funds in the precarious condition in which they
were at the time of the execution of the mortgage, and rendered
necessary the institution of proceedings to collect this sum. The
law does not require that a guardian shall be an insurer of the
funds of his ward. He is held to possess and to exercise the skill,
prudence and energy, in the management of the moneys of his wards,
that a man of good business capacity and experience would ordi-
narily exercise in regard to his own affairs of the same nature.
Where the guardian has violated no statute in the investment of the
ward's funds, the chancellor will require nothing more of him in
such case than is here indicated.

It is quite true that something more than good faith on the part
of the guardian is required, and that an ill-advised investment will
not be sanctioned by the chancellor because counsel advised it, and
the guardian thought he was doing the best thing for his wards.
He must exercise a sound discretion, to be judged of by all the sur-
rounding circumstances, and must be possessed of the capabilities
above mentioned.

Nor does it appear to us that the fact that appellee may have been
partly induced to make this setlement, by fear of suit for damages
on the attachment bonds, should render him liable, provided the
change of the investment was otherwise desirable, not in law, cer-
tainly, because the responsibility should not attach if he acted as a
prudent and competent business man would have done under the

circumstances then surrounding him; and not in morals because the liability to suit upon the attachment bond resulted from an earnest and honest effort to secure the funds of the wards imperiled by the misconduct of a former guardian.

Suppose, as we have a right to assume from the evidence in this record, that appellee knew that Woodson was in failing circumstances and that Moore was not worth the whole debt if he claimed his exemptions, and that in the then uncertain state of things as to when the judgment could be obtained, and as to whether it would be satisfied when obtained, the mortgage had been offered and refused by appellee, and that subsequently any portion of the debt was lost, would not appellants' claim for reparation have been better founded both in law and morals? Such a dilemma leaves the competent and conscientious guardian without means to shield himself from loss. If such were the law, solvent, capable and honest guardians could not be obtained to assume such risks. The chancellor delights to watch and protect the interests of its infant wards, and to accomplish that end he likewise delights in shielding the competent and faithful guardian from losses resulting from unforeseen commercial disasters that no human foresight could provide against. This record develops the fact that whatever may be the defect in the title to the land, and we do not think any available defect is shown, the loss is not so readily traceable to the defect of title as to the general shrinkage of values.

The errors suggested in the case of Jones against Woodson are not such as to render the judgment void. A failure to describe the land by metes and bounds was erroneous, certainly, and might under certain circumstances authorize a reversal on appeal; but such an error has never been held to render the judgment void. The judgment for the sale of the land, as well as the judgment in favor of the appellee against the wards, must be treated as valid until reversed on appeal.

The judgment of the court below is *affirmed*.

*Breathitt & Payne, S. J. Boyd, for appellants.*

*McPherson & Champlain, for appellees.*